# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

MICHAEL FARIS

v.                                                              No. 3:22-cv-23-BJB

CENTERS FOR DISEASE CONTROL &
PREVENTION, ET AL.

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Michael Faris is a Kentuckian who frequently flies west for work. During the pandemic, he resisted the Federal Travel Mask Mandate that applied to him during his continental commutes. So he sued the Centers for Disease Control & Prevention, the Department of Health and Human Services, American Airlines, JetBlue Airways, Southwest Airlines, Spirit Airlines, United Airlines, and numerous yet-to-be-named airline employees who allegedly enforced the Mandate. The Mandate, of course, no longer remains in effect. So the Court, in a previous opinion, granted the agencies' motion to dismiss Faris's claims against them on mootness and standing grounds.

Now the Airline Defendants—American, JetBlue, Southwest, Spirit, and United—have moved to dismiss the all of Faris's claims against them. *See* Motion to Dismiss (DN 137). Three airlines—United, American, and JetBlue—also contend they are not subject to personal jurisdiction in this district. *Id*. at 20–22. Faris's pro se allegations include claims that the Airline Defendants' implementation of the Mandate violated the U.S. Constitution as well as numerous state and federal civil-rights laws. These purported violations, he maintains, entitle him to declaratory, injunctive, and monetary relief against the Airlines. Many of his theories are legally adventurous and most would fail to bring him relief even if his allegations prove true, so the Court dismisses several claims as described below. But the Airline Defendants are all subject to personal jurisdiction and haven't shown that Faris's Rehabilitation Act and Unruh Act claims are factually implausible or legally impossible. So those claims, along with Faris's claims for equitable relief, survive this motion.

# I. ALLEGATIONS

At the motion-to-dismiss stage, the Court accepts all non-conclusory allegations as true and reads them in the light most favorable to the plaintiff, particularly since Faris is proceeding pro se.

According to the pleadings, Faris works as a helicopter maintenance supervisor involved in wildland fire suppression and electric-line construction. This job requires him to frequently travel by air. Complaint (DN 1) ¶¶ 1–3. He was flying regularly to California and elsewhere when the pandemic complicated his travels. The CDC mandated that passengers wear masks during commercial flights. ¶ 63–76; 86 Fed. Reg. 8025 (Feb. 3, 2021). That Mandate also required "operators of conveyances and transportation hubs," such as the Airline Defendants, to use their "best efforts" in enforcing the mask requirement. *Id.*

Faris suffers from a generalized anxiety disorder. As a result, wearing a face mask during air travel causes Faris to experience nausea, light-headedness, headaches, eye irritation, dizziness, dehydration, and fainting. Complaint ¶¶ 12–14. While the Mandate was in effect, and after the airlines allegedly stopped granting "mask exemptions," Faris nevertheless took 26 flights on American, 23 on United, and 1 on Spirit. He also booked 2 flights with Southwest and another with JetBlue. ¶¶ 5–9. The Airline Defendants, he says, harmed him by denying his mask-exemption requests, forcing him to wear a mask, requiring him to explain sensitive health concerns in public spaces, and generally discriminating against him based on his disability. ¶¶ 16–54, 302–06.

In response, Faris filed this lawsuit in January 2022. The Complaint asserts 11 state and federal claims (as well as allegations that the Airline Defendants violated international law) stemming from the Airline Defendants' enforcement of the Mandate.[1] It also includes administrative-law claims against the CDC and HHS—most notably seeking to invalidate the Mandate as unlawful. But this Court has already dismissed the claims against the federal agencies as moot after the Government stopped enforcing the Mandate due to litigation enjoining it. *See* First

---

[1] Faris's Complaint (at pp. 172–74) alleges that the Airline Defendants violated international law—specifically the International Covenant on Civil & Political Rights and the Convention on International Civil Aviation—by enforcing the Mandate. But his response didn't address the Airline Defendants' rebuttal that no private right of action exists to enforce the treaties he cites. *See* Motion to Dismiss at 19–20; Defendants' Reply (DN 139) at 10. Faris therefore effectively surrenders his international-law claims. *See Degolia v. Kenton Cnty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citation omitted)).

MTD Opinion (DN 135), *Faris v. CDC*, No. 3:22-cv-23, 2023 WL 5616070, at *4 (W.D. Ky. Aug. 30, 2023).

Faris still seeks money damages for past injuries he says the Airline Defendants caused. These claims, unlike his equitable ones against the Federal Defendants, "are retrospective in nature," so "they cannot be moot." First MTD Opinion, 2023 WL 5616070, at 4 (citing *Ermold v. Davis*, 855 F.3d 715, 719 (6th Cir. 2017)). And his equitable claims against the Airline Defendants stand on a different footing than the moot claims against the agency defendants, as discussed below.

## II. PERSONAL JURISDICTION

American, United, and JetBlue briefly contend that this Court lacks personal jurisdiction over them. The parties address the jurisdictional arguments on the pleadings—without any evidentiary submissions or requests for a hearing—so the plaintiff's burden of establishing jurisdiction is "relatively slight." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (citation omitted). The Court "must review the pleadings and affidavits in the light most favorable to Plaintiffs, without considering the 'controverting' assertions of the Defendants." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005) (citation omitted).

Faris invokes specific rather than general personal jurisdiction with respect to American, JetBlue, and United. Plaintiff's Response (DN 138) ¶¶ 113–19. Specific jurisdiction can apply only if a claim "'arise[s] out of or relate[s] to' a defendant's contacts with the forum." *See Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (citations omitted). To have personal jurisdiction over an out-of-state individual or entity, "a federal court must satisfy the long-arm law of the state as well as federal due process." *Evans v. Brown*, No. 19-5603, 2019 WL 9047225, at *2 (6th Cir. Dec. 6, 2019) (citation omitted).

**A. Kentucky's Long-Arm Statute.** None of the three airlines challenges jurisdiction on this basis. Kentucky's long-arm statute provides that a "court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from" any of nine categories of enumerated activities. KRS § 454.210(2). Four arguably appear relevant and satisfied here: transacting business in the Commonwealth, contracting for goods and services here, causing tortious injury by an act or omission here, or causing tortious injury by an act or omission elsewhere by a defendant who regularly does or solicits business, derives substantial revenue, or engages in other persistent conduct here. § 454.210(2)(a)–(d).

American and United are covered because they directly "transact[t] … business" and "contrac[t] to supply services" by flying commercial flights in and out of Kentucky. § 454.210(2)(a)–(b). American and United operate numerous flights out of Louisville, many of which Faris has booked or attempted to book. Complaint at

Ex. 1; *see also, e.g., Andreadakis v. CDC*, No. 3:22-cv-52, 2022 WL 2674194, at *13 n.4 (E.D. Va. July 11, 2022) (recognizing personal jurisdiction over airline defendants because the plaintiff "alleged that he attempted to fly or was denied the ability to fly on … the airlines"); *Covington v. Am. Airlines, Inc.*, No. 22-cv-725, 2023 WL 2648782, at *3–5 (D. Md. Mar. 27, 2022) (finding personal jurisdiction over American Airlines based, in part, on flights to and from Maryland).

JetBlue, by contrast, apparently does not fly directly through any airports in Kentucky. Complaint at 6; Motion to Dismiss at 21. But a person in Kentucky can book a flight on JetBlue's website and fly through partner airlines in the state. Plaintiff's Response ¶ 115. So JetBlue appears to contract for services in the Commonwealth and to conduct and solicit significant business generating substantial revenue here, *see* § 454.210(2)(b), (d), and it doesn't contend otherwise.

**B. Federal Due Process.** These three Defendants do resist the notion that personal jurisdiction in Kentucky is consistent with the U.S. Constitution. Due process requires "minimum contacts ... with the forum State ... such that [a defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Sixth Circuit has promulgated a three-prong test that "guides the determination of whether specific jurisdiction exists" and "protects the due process rights of a defendant." *Intera Corp.*, 428 F.3d at 615 (citation omitted). Those requirements are purposeful availment "of the privilege of acting in the forum state," a "cause of action" that "aris[es] from the defendant's activities there," and "a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

American and United say jurisdiction is lacking because "the flights challenged by Faris were not operated by American or United," Reply at 10, "but rather by independently owned regional carriers," Motion to Dismiss at 21. This is merely an unsupported and unsworn assertion, however, which may not even properly be before the Court at this stage. The two airlines offer no description (much less evidence) of their relationship with these unidentified carriers and don't respond to Faris's allegations that these carriers' mask policies were all linked or unified anyway. Nor does the motion to dismiss point to any caselaw addressing whether and why this would defeat jurisdiction. And Faris has traced his causes of action to the flights he regularly took to and from the Commonwealth. The Complaint, moreover, includes flight logs noting several flights on American, Complaint at Ex. 1 (DN-1), and United, Ex. 6 (DN-6), to and from Louisville. Given these ways in which Faris's claims arise out of contacts between United, American, and Kentucky, exercising jurisdiction over these airlines rests on their purposeful availment of the Kentucky market and laws— and is substantial enough to be considered "reasonable."

JetBlue likewise purposefully availed itself of Kentucky's laws—and is reasonably subject to jurisdiction here—because its business, website, and partner airlines apparently target and transact business with customers in the Commonwealth. *See* Plaintiff's Response ¶ 115. Although JetBlue doesn't occupy a physical presence in Kentucky, it hasn't refuted Faris's explanation that its website books flights out of Kentucky. *See id.* Indeed, JetBlue hasn't offered *any* support for its contention that no in-state flights equals no jurisdiction. Nor has it contended that Faris's claims "arise from" the defendants' contacts with the forum state. *See Intera Corp.*, 428 F.3d at 615. The "arising from" requirement is "lenient" and satisfied when "the operative facts are at least marginally related to the alleged contacts" between the defendants and the forum state. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002).

At this stage, the Court gives the pro se plaintiff the benefit of the doubt and construes his pleadings to allege that he interacted with JetBlue from or regarding Kentucky concerning the flight or flights he complains about. Of course, this Court doesn't yet have evidence to that effect—given that the Airline Defendants focused their personal-jurisdiction challenge on the pleadings and not the proof. The contacts between JetBlue and Kentucky that Faris has alleged—business transactions and transportation services online and through partner airlines—sufficiently relate to Faris's claim against the airline that. *See* Complaint ¶ 676 (alleging JetBlue canceled his ticket after he requested a mask exemption).

So exercising jurisdiction is reasonable in light of the alleged connections that exist between JetBlue and Kentucky. And JetBlue hasn't offered any compelling legal reason why jurisdiction would be inappropriate. The Court therefore denies these three Defendants' motion to dismiss for lack of personal jurisdiction.

## III. CLAIMS SUBJECT TO DISMISSAL

In response to a Rule 12(b)(6) motion, Faris's non-conclusory allegations are treated as factually true and viewed in their most favorable light, *see D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)—particularly since he is a non-lawyer representing himself, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, all but two of his claims against the Airline Defendants couldn't result in liability for these airlines and damages for Faris even if he proved all the facts he has alleged. So the Court will grant the motion to dismiss those claims for failing to state a valid claim. *See* FED. R. CIV. P. 12(b)(6).

### 1. Civil Conspiracy

Faris's first claim against the Airline Defendants (Count 12 overall) asserts that the Airline Defendants engaged in a conspiracy to interfere with his civil rights—or at least failed to prevent interference with civil rights—in violation of 42 U.S.C.

5

§§ 1985(3) and 1986, respectively. *See* Complaint ¶¶ 614–31. They conspired, he contends, "with each other, other air carriers, and within their own companies to deprive disabled Americans of their civil rights." ¶ 624. Although Faris's response to the motion to dismiss asserts that "[t]he conspiracy here involves the constitutional right to travel," Response ¶ 10, his Complaint grounds the alleged conspiracy instead in discrimination against disabled travelers: "the Airline Defendants are motivated by a class-based, invidiously discriminatory animus resulting in an unfounded, ridiculous fear that healthy, uninfected disabled travelers who can't wear a face mask are somehow a grave danger," Complaint ¶ 624. The Airlines, he maintains, "conspired to deprive disabled Americans, a protected class, of our civil rights by adopting policies in Summer 2020 that banned anyone medically unable to wear a face mask from using the nation's air-transportation system." ¶ 616.

Section 1985 authorizes a plaintiff to recover damages against persons who "conspire … for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). Importantly, the Sixth Circuit has held that "§ 1985(3) … does not cover claims based on disability-based discrimination or animus." *Bartell v. Lohiser*, 215 F.3d 550, 559 (2000). Instead, Section 1985(3) "only covers conspiracies against: 1) classes who receive heightened protection under the Equal Protection Clause; and 2) those individuals who join together as a class for the purpose of asserting certain fundamental rights." *Id.* at 560 (citation omitted).

The Complaint describes the class of people discriminated against as only "[t]he disabled." Complaint ¶ 615. His response brief acknowledges that "all disabled people are too broad of a category to be considered [as] class-based" discrimination, but "people with specific disabilities, such as mentally disabled or those with disabilities toward masks, should fit well as a class-based disability." Response ¶ 6. He doesn't further refine or define the class, or otherwise explain how or why the Airlines and their alleged co-conspirators agreed to target people with these disabilities.[2]

Nor does Faris support his description of the class with any legal authority. The Airline Defendants, meanwhile, point to binding precedent that rejects his position. *See Bartell*, 215 F.3d at 559 ("§ 1985(3) … does not cover claims based on disability-based discrimination or animus."). Generally speaking, persons with disabilities receive protection against discrimination on that basis by statute (such as the Americans with Disabilities Act or the Rehabilitation Act or state law, as

---

[2] In places the papers describe discrimination against Faris individually ("… any person or class of persons…"), not just against a class of disabled persons. 42 U.S.C. § 1985(3). To the extent this represents a parallel theory of recovery, it would fail for lack of a plausibly pled conspiracy and most of the other reasons described above.

discussed below), not as a matter of federal constitutional law.  *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 457 (6th Cir. 2008) ("Disabled persons are not a suspect class for purposes of an equal protection challenge.") (citing *Tennessee v. Lane*, 541 U.S. 509, 522 (2004)).  No precedent appears to extend § 1985 to disability-based discrimination or animus, even assuming Faris plausibly pled it here.

Even if § 1985(3) *did* apply to Faris or the class he identifies—disabled Americans who cannot mask, *see* Plaintiff's Response ¶ 7—he hasn't plausibly pled facts giving rise to a conspiracy.  To assert a Section 1985(c) civil-conspiracy claim, a plaintiff must allege "specific facts suggesting the existence of a conspiracy."  *See Newman v. Howard Univ. Sch. L.*, No. 1:23-cv-0436, 2024 WL 450245, at *14 (D.D.C. Feb. 6, 2024) (dismissing claim that "nakedly assert[ed]" a conspiracy without "any specific facts about what the conspiracy entailed or why mere 'lawful parallel conduct' was not more likely responsible for his injuries") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  In *Seklecki v. CDC*, the Court dismissed a conspiracy claim that mirrors Faris's.  *See* 635 F. Supp. 3d 15, 23 (D. Mass 2022).  Seklecki alleged that airlines "conspired to interfere with the civil rights of disabled passengers" by each implementing mask mandates around the same time.  *Id*.  The Court rejected this argument, reasoning that "[n]ot all parallel conduct ... suggests an unlawful agreement."  *Id*.  Like Seklecki, Faris points to no facts suggesting the Airline Defendants agreed with each other, federal agencies, or others to discriminate against disabled Americans specifically in promulgating and implementing masking policies.

The § 1986 claim necessarily falls along with its § 1985(c) counterpart.  Section 1986 imposes liability against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in Section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed." 42 U.S.C. § 1986.  As that text plainly indicates, "Section 1986 is designed to punish those who aid and abet violations of [Section] 1985."  *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980).  Because Faris has not plausibly pled a violation of § 1985(3), his § 1986 fails as well.

### 2. The Air Carrier Access Act

Faris also seeks damages based on alleged violations of the Air Carrier Access Act.  But that statute does not authorize private parties to sue to enforce its protections.  The ACAA proscribes airlines from discriminating against passengers who have a "record" of "physical or mental impairment." 49 U.S.C. § 41705(a).  Faris acknowledges that the statute assigns enforcement to the U.S. Department of Transportation, contains many specific limits and procedures governing enforcement by that agency, and never mentions private enforcement through litigation.  *See*

7

Plaintiff's Response ¶ 20, 22. Typically this makes clear that Congress did not intend to authorize private enforcement. "The express provision of one method of enforcing a substantive rule," the Supreme Court has instructed, "suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001). Indeed, numerous circuits have read the Act not to contain a private right of action.[3]

But during the pandemic, according to Faris, a private right of action emerged because the Department of Transportation "blatantly abdicate[d] its legal duty" to enforce this law and "[told] airlines they may violate the law." Complaint ¶ 648. He refers to a February 5, 2021, guidance document that interpreted the Department's regulations "permit the airline to impose reasonable conditions, restrictions, or requirements on a passenger who has a 'medical condition' that may cause the passenger to pose a risk to the health and safety of others." Ex. 51 (DN 1-25).

Here, the text of the ACAA provides for one method of enforcement—investigation by the Secretary. 49 U.S.C. §§ 46101(a), 41705(c)(1). As the Defendants explain, Motion to Dismiss at 9, Faris may file a complaint with the Secretary of Transportation and if necessary petition for review of its adjudication in one of two United States Courts of Appeals, *see* 49 U.S.C. §§ 46101(a), 41705(c)(1), 46110. So the statute implicitly excludes the novel brand of contingent private enforcement that Faris proposes. *See Sandoval*, 532 U.S. at 290. Ultimately, "the choice as to which remedies are appropriate is for Congress rather than the courts." *Boswell*, 361 F.3d at 1270. Even if Faris were correct that the Department of Transportation skirted its duty to enforce the ACAA, that alone would not allow a judge to modify the statutory scheme. Judges "are simply not authorized to compare the remedies specifically provided by Congress with a private right of action and to then impose the latter remedy if [they] deem it a better means of enforcing the [ACAA]." *Id.*

### 3. Practicing Medicine Without a License

Faris alleges that the Airline Defendants illegally practiced medicine without a license when they enforced their mask mandates. Complaint ¶¶ 762–85. He states that requiring passengers to wear masks violates the laws of every state. *See, e.g.*, KRS § 311.560(1) (Kentucky); Cal. Bus. & Prof. Code § 2052(a) (California); Fla. Stat. ch. 458.327(1)(a) (Florida)). Faris also contends this violates federal the Food, Drug, and Cosmetics Act (FDCA). ¶¶ 764–65, 770.

This claim fails for (at least) two reasons.

---

[3] *See Segalman v. Southwest Airlines Co.*, 895 F.3d 1219, 1224–25 (9th Cir. 2018); *Stokes v. Southwest Airlines*, 887 F.3d 199, 202 (5th Cir. 2018); *Lopez v. Jet Blue Airways*, 662 F.3d 593, 597–58 (2d Cir. 2011); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1270 (10th Cir. 2004); *Love v. Delta Air Lines*, 310 F.3d 1347, 1359 (11th Cir. 2002).

First, and most obviously, nothing in Faris's pleadings suggests the Airline Defendants were actually practicing medicine by requiring passengers to wear a mask on flights. Kentucky law, for example, defines "the practice of medicine" as "the diagnosis, treatment, or correction of any and all human conditions, ailments, diseases, injuries, or infirmities by any and all means, methods, devices, or instrumentalities." KRS § 311.550(10);[4] *see also* Cal. Bus. & Prof. Code § 2052(a) (requiring licensure in California for "any person who practices or attempts to practice … or who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other physical or mental condition of any person"). Faris alleges nothing more than that the Airline Defendants were "implementing the FTMM," which relied on the public-health judgments of others to require measures generally thought to be preventative, not curative, of future Covid cases amidst the ongoing pandemic. *See Seklecki*, 635 F. Supp. 3d at 27. Other courts have rejected out of hand the notion that "asking someone to wear a mask is in any way analogous to practicing medicine." *Wall v. Southwest Airlines*, No. 6:21-cv-1008, 2021 WL 8201967, at *3 (M.D. Fla. Dec. 8, 2021); *see also Gunter v. N. Wasco County Sch. District Board of Educ.*, 577 F. Supp. 3d 1141, 1151 n.5 (D. Or. Dec. 22, 2021) (rejecting argument "that having school personnel insist on the correct placement of … masks … in school … constitutes practicing medicine"). Faris hasn't offered any facts or explanation that would contradict these decisions or suggest the Airline Defendants were engaged in the "diagnosis, treatment, or correction" of a disease or injury under KRS § 311.550(10). Because nothing in the pleadings suggests the Airline Defendants were practicing medicine, Faris's claim fails.

Second, state law doesn't provide Faris with a right of action—at least not one that would survive preemption by the Deregulation Act, as discussed below. "[S]tate law claims regarding an airline's decision to refuse to transport passengers based on safety concerns and the FTMM are preempted by the [Deregulation Act]." *Marcus v.*

---

[4] In diversity cases, federal courts follow the choice-of-law rules of the state in which they sit—here, Kentucky. *See Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002) (citations omitted). "Kentucky courts have an extremely strong and highly unusual preference for applying Kentucky law even in situations where most states would decline to apply their own laws." *Osborn v. Griffin*, 865 F.3d 417, 443 (6th Cir. 2017). "Kentucky courts have apparently applied Kentucky substantive law whenever possible …. [I]t is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary." *Memorial Hall Museum, Inc. v. Cunningham*, 455 F. Supp. 3d 347, 358 n.1 (W.D. Ky. 2020) (quoting *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983)). Many of the important events alleged in the Complaint and discussed throughout this opinion, however, happened in California. Neither party appears to have taken a position on whose laws apply. Regardless of whether California or Kentucky law applies, the claims aside from the Unruh Act and Rehabilitation Act (neither of which pose any choice-of-law problems) would fail.

*CDC*, No. 2:22-cv-2383, 2023 WL 3044614, at *10 (C.D. Cal. Feb. 21, 2023). That's because this sort of tort suit—assuming "medicine" is read broadly enough to cover airline mask policies—would regulate the provision of airline services in violation of the Deregulation Act. *See* 49 U.S.C. § 41713(b)(1).

Likewise, the FDCA doesn't provide Faris with a private cause of action against the Airline Defendants. *See Marcus*, 2023 WL 3044614, at *10; *see also Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir. 1995) ("Congress did not intend, either expressly or by implication, to create a private cause of action under the FDCA."). So even if Faris could make out a plausible allegation that the Airlines were practicing medicine, he hasn't identified and doesn't appear to have a right of action to privately enforce any such protection.

### 4. Constitutional Right to Travel

Faris contends that the Airline Defendants deprived disabled Americans of their constitutional right to travel by refusing service to those who could not wear masks. *See* Complaint ¶¶ 804–06.

At the outset, no party squarely addresses whether and why Faris has a right to enforce this aspect of constitutional doctrine through private litigation against private parties. Faris cites 49 U.S.C. § 40103, which provides that "[a] citizen of the United States has a public right of transit through the navigable airspace" and "the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board … before prescribing a regulation or issuing an order of procedure that will have a significant impact on the accessibility of … commercial air transportation for handicapped individuals." This is a far cry from any express or implied cause of action. *See Bowling Green v. Martin Land Dev. Co.*, 561 F.3d 556, 561 (6th Cir. 2009) ("[A]s the district court properly points out, … § 40103 contain[s] no private right of action.").

Some precedent indicates an implied private right of action might exist under some circumstances—even against private actors. *See Griffin v. Breckenridge*, 403 U.S. 88, 105–06 (1971) ("Our cases have firmly established that the right of interstate travel is constitutionally protected … and is assertable against private as well as governmental interference."); *Shuler v. Swatek*, 465 F. App'x 900, 903 (11th Cir. 2012) ("[T]he only claims that have been recognized by the Supreme Court as viable under § 1985(3) against private defendants are claims for deprivation of the right to interstate travel and freedom from involuntary servitude."). But these decisions (like Faris's complaint) root the cause of action in 42 U.S.C. § 1985(3), which—as discussed above—applies to *conspiracies* to deprive others of their civil rights. *See, e.g.*, *Griffin*, 403 U.S. at 101 (holding that Ku Klux Klan Act extends to private as well as governmental conspiracies). And as also discussed above, Faris hasn't pled a

10

plausible conspiracy among the Airline Defendants and federal Government to restrict his right to travel.

Even if Faris did have a cause of action, his right-to-travel claim would likely fail. The constitutional right to travel has been interpreted to "includ[e] three components: (1) the right of a citizen of one State to enter and to leave another State; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State; and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Secklecki*, 635 F. Supp. at 27 (citing *Saenz v. Roe*, 526 U.S. 489, 500 (1999)).

As *Seklecki* put it, a mask-objecting plaintiff "was not prohibited from getting on a plane; he was prohibited from getting on a plane without a mask or mask exemption." *Id.*; *see also Wall v. CDC*, No. 6:21-cv-975, 2022 WL 1619516, at *2 n.9 (M.D. Fla. Apr. 29, 2022), *vacated as moot*, 2023 WL 8667778 (11th Cir. Dec. 15, 2023) ("Plaintiff is not barred from traveling to another state by virtue of not wearing a mask. A mere inconvenience caused by a reasonable government regulation is not enough to amount to a denial of this fundamental right.") (citing *Saenz*, 526 U.S. at 500). Courts including the Sixth Circuit have reviewed with considerable skepticism arguments that conditions on travel trigger a violation of that constitutional right. "[J]ust as the right to speak cannot conceivably imply the right to speak whenever, wherever and however one pleases—even in public fora specifically used for public speech—so too the right to travel cannot conceivably imply the right to travel whenever, wherever and however one pleases." *See Johnson v. City of Cincinnati*, 310 F.3d 484, 502 n.9 (6th Cir. 2002) (citing *Lutz v. City of New York*, 899 F.2d 255, 269 (3d Cir. 1990)).

Before the pandemic, multiple courts had recognized that "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on travel simply do not amount to the denial of a fundamental right." *See Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (cleaned up) (citing Fifth, Ninth, and D.C. Circuit opinions that agree)). Plus, Faris *did* fly with some of the Airline Defendants despite their mask policies. ¶¶ 5, 8–9. Because even on his own telling these regulations on one mode of transportation (albeit a very important one) likely didn't deprive him of his right to travel, and because he lacks a private right of action against private actors based on conclusory allegations of conspiracy, Faris's right-to-travel claim fails.

### 5. Claims Potentially Subject to Preemption

Faris asserts a number of state-law claims that the Airline Defendants say are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713: deceptive trade practices, fraudulent misrepresentation, invasion of privacy, breach of contract,

reckless endangerment, and violation of California's Unruh Act. *See* Motion to Dismiss at 12, 15–19.

The Airline Defendants are partly right: the claims for deceptive and misleading trade practices, fraudulent misrepresentation, and invasion of privacy are all preempted because Faris's tort theories would purport to bring aspects of airline service under state regulation. The Deregulation Act preempts states from regulating airline prices, routes, and services: "a State, political subdivision of a state, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." § 41713(b)(1). The term "service" refers to the "bargained-for or anticipated provision of labor from one party to another." *See Headstream Technologies, LLC v. FedEx Corp.*, No. 22-1410, 2023 WL 1434054, at *3 (6th Cir. 2023).

As to Faris's breach-of-contract or reckless-endangerment claims, the Court need not decide whether the Deregulation Act preempts them because they fail for independent reasons, as explained below. And the Deregulation Act doesn't appear to preempt the Unruh Act claim, at least as currently pled and argued, so that claim survives the motion to dismiss—as discussed in the next section.

**a. Deceptive and misleading trade practices, fraudulent misrepresentation, and invasion of privacy.** Faris asserts that the Airline Defendants "deceived their customers … into believing [that] face coverings are good for [their] health when the reality is they cause more than 60 documented harms and create havoc in the sky due to oxygen deprivation." Complaint ¶ 792. The airlines also allegedly "falsely represented that … 'federal law' requires airline passengers [to] wear face masks" and failed to disclose "dozens of health risks" associated with wearing a mask. *See* ¶¶ 799–800. And Faris posits that the Airline Defendants invaded the privacy of customers seeking mask exemptions by requiring them to share sensitive details regarding their medical conditions in order to be approved for an exemption. ¶¶ 787–790.

In his filings, Faris doesn't pinpoint any state laws against deceptive and misleading trade practices, fraudulent misrepresentation, or invasion of privacy. *See* ¶¶ 786–802; Plaintiff's Response ¶¶ 90–96. Instead he cites only federal law—a section of the Federal Aviation Act and a Department of Transportation regulation regarding agency adjudication—indicating that airlines have a duty not to deceive or mislead their customers. Complaint ¶ 796 (citing 49 U.S.C. § 41712; 14 C.F.R. § 399.79). Neither Section 41712 nor Part 399 offer him a private right of action, however. That statute specifies that the "Secretary [of Transportation] may investigate and decide whether an air carrier … is engaged in an unfair or deceptive practice," and makes no mention of a private cause of action. Courts interpreting this

language—which focuses solely on the cabinet secretary—have held that "individual consumers are not even entitled to initiate proceedings under § 41712." *Rudolph v. United Airlines Holdings, Inc.*, 519 F. Supp. 3d 438, 452 n.7 (N.D. Ill. 2021) (cleaned up). And the regulation Faris cites discusses "enforcement proceedings before an administrative law judge" brought by the government, not by a private plaintiff. 14 C.F.R. § 399.79(f). It goes on to empower the Department of Transportation, rather than plaintiffs, to "bring a civil action in a district court of the United States." § 399.79(g). So Faris cannot rely on either of the federal provisions he cites to afford him a private right of action; they confer enforcement authority on the public agency—not the private plaintiff.

Even assuming these three claims are construed as state common-law tort claims, not federal regulatory violations, they still fail because the Deregulation Act preempts them. This is true regardless of whether Faris is relying on state common law or positive law. *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281 (2014) ("[S]tate common-law rules fall comfortably within the language of the [Deregulation Act] preemption provision.").

As to the deceptive trade-practices claim, the Supreme Court's decision in *Morales v. Trans World Airlines, Inc.* directly controls. 504 U.S. 374 (1992). That decision involved state consumer-protection laws that had been applied to restrict deceptive airfare advertisements. *Id.* at 383, 398. The Court concluded the Deregulation Act preempted these applications of state law. "State enforcement actions having a *connection with* or *reference to* airline 'rates, routes, or services' are preempted under [the Deregulation Act]." *Id.* at 384 (emphasis added). The same reasoning would prevent Faris from applying deceptive trade practices aspects of state law to govern airline services, specifically the provision of allegedly deceptive messaging and instructions regarding the public-health benefits of masks. Perhaps this on-point authority is why Faris offers no meaningful response to the motion to dismiss this claim; his opposition merely incorporates by reference his breach-of-contract argument, Plaintiff's Response ¶¶ 97–98, which cannot save this claim.

The Deregulation Act also preempts Faris's fraudulent-misrepresentation claim. Again, Faris doesn't really respond to the motion to dismiss this claim. Nor does he doesn't ground this claim in any law whatsoever—state or federal. Assuming the fraudulent-misrepresentation claim rests on state tort law, as is typically the case, federal law preempts its application here. The Supreme Court's holding in *American Airlines, Inc. v. Wolens* shows why. The Court considered whether the Deregulation Act preempts the Illinois Consumer Fraud Act—which prohibits "any deception, fraud, false pretense, false promise, [or] misrepresentation." 513 U.S. 219, 227–28 (1995) (addressing 815 Ill. Comp. Stat. Ann. § 505/2 (2012)). Because that law "guide[d] and police[d] the marketing practices of the airlines," the Court held that the Deregulation Act preempted it. *See id.* at 228.

Again, Faris doesn't point to any legal authority that might rebut a similar conclusion here. He merely alleges that the Airline Defendants misrepresented federal law in requiring passengers to wear masks, given that Congress passed no such law. *See* ¶¶ 799–802. Right or wrong, this allegation plainly "relate[s] to … 'services,' *i.e.*, access to flights"—and is therefore preempted. *See Wolens*, 513 U.S. at 226.

Finally, the Deregulation Act likewise preempts Faris's claim that Airline questions about mask exemptions amounted to an invasion of privacy. Complaint ¶¶ 787–90. Again, Faris doesn't supply this Court with any federal or state laws that form the basis of this claim, the Airline Defendants treat it as a state common-law claim, Motion to Dismiss at 17–18; *see* Complaint ¶¶ 786–90, and Faris offers no rebuttal. Indeed, both California and Kentucky law make this tort claim available. *See, e.g., Capra v. Thoroughbred Racing Ass'n of N. Am., Inc.*, 787 F.2d 463, 464 (9th Cir. 1986) (California's invasion-of-privacy tort); *McCall v. Courier-J. & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981) (Kentucky's invasion-of-privacy tort). So, like other courts, this Court treats it as a state-law claim. *See, e.g., Seklecki*, 635 F. Supp. at 24; *Marcus*, 2023 WL 3044614, at * 11.

*Seklecki* confronted a similar invasion-of-privacy claim and held the Deregulation Act preempted it. *See* 635 F. Supp. at 24. There, as here, the plaintiff argued that "the airlines were invading his privacy" by "requiring proof of medical conditions to obtain an exemption from the mask mandate." *Id*. Because the Deregulation Act "preempts enforcement of a state law relating to a service of an air carrier," however, the Court dismissed. *Id*. Faris's invasion-of-privacy claim, like Seklecki's, would impermissibly regulate the Airline Defendants' provision of services: specifically, the Airlines' boarding procedures, application of federal regulations, and health-and-safety measures on planes.

**b. Breach of contract.** Did the Airline Defendants breach their "contracts of carriage" when they allegedly denied service because Faris wouldn't wear a mask? Complaint ¶¶ 737–55; Plaintiff's Response ¶ 74. He is right that the Deregulation Act "allows room for court enforcement of contract terms set by the parties themselves." Plaintiff's Response ¶ 64 (citing *Wolens*, 513 U.S. at 222). But Faris is wrong that his allegations show the Airline Defendants breached any contracts here. He asserts his "contracts of carriage" with the Airline Defendants establish a binding contract with him, that the defendants breached, and that these breaches caused him to suffer damages. Complaint ¶¶ 737–52. The motion to dismiss takes issue only with the existence of breach—contending that Faris hasn't pointed to any contractual obligation they violated and similarly has ignored contractual language specifically providing that their service would comply with federal regulations. *See* Motion to Dismiss at 15–16.

Faris entered "contracts of carriage" with the Airline Defendants in which the parties assumed "rights, liabilities, and duties" against one another. *See* Complaint ¶ 752. He alleges that the Airlines breached these agreements by requiring him to wear a mask for service even though the Contracts either made no mention of that requirement or permitted exemptions. ¶¶ 737–52. The main problem with Faris's breach claim is that, as the Airline Defendants note, he never points to the contractual language or provision that they arguably breached. Indeed, Faris does not account for provisions in his contracts that affirmatively provide for compliance with federal regulatory requirements like the Mandate.

For example, Faris's contracts of carriage with Spirit and United expressly permit those airlines to deny service to customers who refuse to wear a mask. This is clear from language he cites in his own pleadings. *See* Complaint ¶¶ 741–46 (identifying language in the Airlines' contracts of carriage that permit Spirit and United to deny boarding to passengers who refuse to wear a mask); Exs. 232–33 (DN 5-1). American's contract of carriage with Faris provides that the Airline "may not let you fly … for any reason, including if you [f]ail to comply with American Airlines rules or policies," one of which was a masking requirement. Exs. 179 (DN 4-1), 229 (DN 4-3). JetBlue's safety policy at the time of Faris's flights with that airline stated that customers who fail to comply with the Mandate could be denied boarding. *See* Ex. 195 (DN 4-1). Even more plainly, Southwest's disability policy stated that "[r]efusing to wear a mask is a violation of federal law and may result in denial of boarding." Ex. 3 (DN 1-3) at 17. He points to nothing in the contracts or in any legal authority showing that complying with the Mandate would violate rather than carry out these contractual provisions.

**c. Reckless endangerment.** Faris next asserts a claim for "reckless endangerment" against the Airline Defendants because they "muzzl[ed] passengers when the known risks of oxygen deprivation are severe," and "endanger[ed] … passengers by causing thousands of incidents of customers and flight crews battling over mask enforcement." Complaint ¶¶ 758–60. But reckless (or wanton) endangerment is typically a criminal rather than civil provision. "Reckless endangerment is generally considered to be a crime" across the United States. *Dorismond v. Clayton County*, No. 1:22-cv-2880, 2023 WL 9051465, at *3 (N.D. Ga. Nov. 16, 2023) (citing law dictionaries) (citations omitted).

And Faris cites no law indicating that he has a right to sue for reckless endangerment—or could establish its applicability even if he could. *See Marcus v. CDC*, No. 2:22-cv-383, 2023 WL 3044614 *10 (C.D.C. Feb. 21, 2023) ("California does not recognize a cause of action for the tort of reckless endangerment.") (citation omitted); *Muhammad v. City of Lewisburg*, No. 4:21-cv-284, 2022 WL 779405, *5 (M.D. Pa. Jan. 20, 2022) ("Plaintiff's reckless endangerment claim fails because he is trying to recover under a state criminal statute."). Faris cites only a generic

California civil-damages statute to support this claim.[5]  Plaintiff's Response ¶¶ 76–77; *see also* Cal. Civ. Code § 3294.  But this cannot establish a valid claim because "there is no tort claim of reckless endangerment under California law."  *See Brookins v. Rafferety*, 59 F. App'x 983, 983–84 (9th Cir. 2003).  And even if a civil cause of action existed for reckless endangerment, the Airline Deregulation Act would preempt it because conditioning safety and boarding requirements on compliance with federal regulations relates to the "service of an air carrier."  *Andreadakis*, 2022 WL 2674194, at *12 n.3 ("Defendants correctly point out that no civil cause of action exists for reckless endangerment (Count Thirty-Six).  Even if such a cause of action did exist, it would be preempted [under the Deregulation Act].").

## IV. CLAIMS NOT SUBJECT TO DISMISSAL

### 1. The California Unruh Act

California's Unruh Act provides in part that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their … disability [or] medical condition … are entitled to the full and equal accommodations, advantages, facilities, privileges or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  "By its own terms," the Unruh Act "is expressly limited to discrimination that takes place within California's borders."  *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1099 (C.D. Cal. 2015).

Faris alleges that the Airline Defendants discriminated against him on the basis of his disability.  The motion to dismiss doesn't challenge the sufficiency of those allegations or contend Faris has failed to plead the elements of an Unruh Act claim.  Rather, it argues the Complaint falls short for two other reasons: Faris "lacks standing to pursue" this claim because he is "a resident of Kentucky," and the Unruh Act is preempted by the Deregulation Act, ACAA, and Federal Aviation Act as applied to airlines.  Reply at 4–5.

The standing argument is unavailing.  The Airline Defendants characterize the Complaint as "challeng[ing] acts and omissions … which occurred outside of California."  *Id.* at 5.  But the Complaint explains that Faris scheduled "numerous flights on American, Spirit, and United in and out of airports located in California."  Complaint ¶ 726.[6]  At Los Angeles International Airport, he says that a Spirit check-

---

[5] Faris says that "Kentucky law is similar [to California law]," but doesn't identify any Kentucky law supporting a civil cause of action for reckless endangerment.  Plaintiff's Response ¶ 80.  He is likely right insofar as Kentucky, like California, does *not* recognize a tort of reckless endangerment, but only a crime of wanton endangerment.  *See* KRS § 508.60.

[6] Although it appears that a "substantial part of the events" relevant to this claim took place in California, neither party disputes venue.  28 U.S.C. § 1391(b)(2).

in agent allegedly refused to grant Faris a mask exemption.  ¶ 18.  In Ontario, California, a United agent apparently told Faris that he had to "put on a mask before stepping into the jetway, ignoring his medical exemption." ¶ 43. While walking down that bridge, Faris suffered a panic attack and fainted, injuring his elbow and knee. *Id.*  United then told Faris that he could not fly because of the episode.  ¶ 44.  Later that day, American banned Faris when he attempted to check in for a flight in Ontario and asked for a mask exemption.  ¶ 45.[7]

At least when viewed in the light most favorable to Faris, these allegations plead discrimination within the meaning of the Unruh Act—and the Airline Defendants don't contend otherwise.  Why they contend that Faris was not a "person within the jurisdiction of California," Reply at 5 (citing Cal. Civ. Code 51(b)) (cleaned up), is hardly clear and not a basis for dismissal.  The decisions cited by the Airline Defendants involve instances of discrimination alleged to have occurred *outside* California; obviously that is not the situation here.  And to the extent the Airline Defendants emphasize Faris's Kentucky citizenship, that also appears irrelevant. The limited precedent they cite for this proposition doesn't reflect a California residency requirement for Unruh Act claims.  *See* Motion to Dismiss at 14; *see also, e.g., Nia v. Bank of America, Inc.*, 603 F. Supp. 3d 894, 906 (S.D. Cal. 2022) (identifying elements of Unruh Act claims without mention of any California residency requirement).

The preemption question is closer, but ultimately fails to justify dismissal.  As above, the Airline Defendants maintain that their implementation of the Mandate amounts to a "service" that the Deregulation Act shields from state regulation.  But Sixth Circuit precedent has directly addressed the interaction of state anti-discrimination laws and the Deregulation Act.  In the race-discrimination context, the Court held that the Act doesn't preempt such claims because they bear only a "tenuous, remote, or peripheral … relation to airline rates or services."  *See Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493, 495–96 (6th Cir. 1999).  "State law claims of *racial* discrimination—as opposed to claims of discrimination on the basis of physical characteristics that might have some bearing on the individual's ability to render service safely and efficiently—are not preempted, in our view; they bear 'too

---

[7] Faris maintains he flew in and out of California on American, Spirit, and United only, but that "the other Defendants" also "discriminated against [him] in California, because, if they would have allowed [him] to travel, [he] could have easily switched to their airline while in California."  Response at 12.  A potentially important but as-yet-unclear issue is whether Faris is trying to allege hypothetical discrimination (they *would've* discriminated against me) or instead actual historical discrimination (they *did* discriminate against me and that's what kept me from flying the other airlines in and out of California).  Regardless, the Airline Defendants don't parse this claim on a defendant-by-defendant basis, so at this stage there's no basis for dismissing the claim against some but not all Defendants.

tenuous, remote, or peripheral' a relation to airline rates or services." *Id.* at 495 (quoting *Morales*, 504 U.S. at 390).

Outside the context of racial discrimination, the *Wellons* decision acknowledged that "[t]he Second, Ninth, and Eleventh Circuits have all held that the Deregulation Act does not preempt state laws against discrimination on the basis of … perceived disability," although the Sixth Circuit took no position of its own in that case. *See id.* at 496 & n.3 (citations omitted); *see also Newman v. Am. Airlines, Inc.*, 176 F.3d 1128, 1131 (9th Cir. 1999) (holding that the Deregulation Act doesn't preempt "alleged discrimination to [airline] passengers due to their disabilities"). Since then, courts around the country admittedly "have struggled to determine when a claim's connection to carrier services is sufficiently strong to merit preemption, and when it is not." *Headstream Technologies,* 2023 WL 1434054, at *2 (6th Cir. Feb. 1, 2023) (holding common-law claims based on mishandling and misdelivery of a package are preempted by the Deregulation Act). *See also id.* at *6 (Murphy, J., concurring in part) (lamenting difficulty of "distinguish[ing] a 'regular' connection (subject to preemption) from a 'tenuous' one (saved from preemption)"). To the extent the Airline Defendants may claim the benefits of Deregulation Act preemption by establishing that "air safety [o]r market efficiency is appreciably hindered by" state nondiscrimination laws like the Unruh Act, *Wellons*, 165 F.3d at 496, they have not yet done so. And a "Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).

Nor does the ACAA preempt Faris's Unruh Act claim. The Airline Defendants offer a cursory assertion that the ACAA "exclusively governs allegations of discriminatory or unfair treatment of airline passengers claiming a disability." Motion to Dismiss at 13. They cite two district-court decisions from the Ninth Circuit interpreting the ACAA to preempt IIED and NIED claims. Neither the brief nor the reply say where that preemptive force comes from or why it would apply to Faris's claims. Meanwhile, Faris identifies two decisions indicating that "[t]he ACAA does not … preempt any state remedies that may be available when airlines violate those standards." *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1010 (9th Cir. 2013); *see also Elassaad v. Independence Air, Inc.*, 613 F.3d 119, 132 (3d Cir. 2010) ("[W]e are not persuaded that Congress intended the ACAA to preempt any state regulation of the interaction between an air carrier and disabled passenger (or disabled persons in general)."). In reply, the Airline Defendants appear to acknowledge that the preemptive force of the ACAA is limited in the context of disability-discrimination claims. Lacking any reasoned basis in the motion to dismiss this pro se claim on the basis of ACAA preemption, the Court declines to dismiss.

Similarly, the assertion of implied Federal Aviation Act preemption turns on the bare assertion that Faris's discrimination claim would amount to "state regulation of airline safety." Motion to Dismiss at 13. At this stage of the proceedings, that is not the only or even the best reading of Faris's pleadings. While the Airline Defendants may be right that the Mandate itself related directly to airline "safety and security," *id.* at 14, the totality of Faris's allegations of mistreatment are not so easily cabined.

### 2. The Rehabilitation Act

Faris's next claim arises under the Rehabilitation Act, which prohibits recipients of federal financial assistance from discriminating against people with disabilities. Complaint ¶¶ 632–42. "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Because the Airline Defendants accepted federal financial assistance under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) during the Covid pandemic, Faris asserts that they are subject to the Act. Complaint ¶ 633.

The Airline Defendants offer two arguments in support of dismissal: they're not recipients of federal funding that brings them within the scope of the Rehabilitation Act, and the ACAA's lack of a private right of action trumps the Rehabilitation Act's express right of action.[8] Neither shows that Faris's allegations, accepted as true and read generously, cannot plausibly support relief.

Under the plain text of the Rehabilitation Act, the statute applies to employers and organizations that receive financial assistance from any Federal department or agency. 29 U.S.C. § 794(a) (prohibiting discrimination "under any program or activity receiving Federal financial assistance"). Faris alleges the Airlines received such financial assistance, pointing to the funding the Airlines received from the CARES Act's Payment Assistance Program. Complaint ¶ 633; Plaintiff's Response ¶¶ 48–50. The Airlines don't deny the receipt of this funding, but they argue that it doesn't count

---

[8] To "state a claim under the Rehabilitation Act," a plaintiff must allege that "1) he has a disability, 2) was otherwise qualified for a program or activity, 3) is being excluded from, denied the benefits of, or otherwise being subjected to discrimination as part of that program or activity solely by reason of his disability, and 4) the relevant program or activity receives federal assistance." *Robertson v. Univ. of Akron Sch. L.*, No. 21-3768, 2022 WL 1836922, at *5 (6th Cir. June 3, 2022) (citing *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 241 (6th Cir. 2019)). The Airline Defendants contest only the fourth element, so the Court needn't consider the other three.

19

as "federal financial assistance" within the meaning of the Rehabilitation Act.  *See* Motion to Dismiss at 10.

That is because, according to the Airline Defendants, the CARES Act funds were specifically devoted to wages and benefits—not discretionary funding.  "[T]he Rehabilitation Act is not applicable to the CARES Act funding because that money was provided for a designated purpose: namely the payroll of Airline Defendants," they maintained, "not … for general operations, much less shareholder dividends." Reply at 3.  True, discussion of subsidies and a "particular purpose" for spending is found in some precedents.  *See, e.g.*, *Lucius v. Fort Taco, LLC*, No. 21-cv-22397, 2022 WL 335491, at *6 (S.D. Fla. Jan. 5, 2022) ("[A] PPP loan is not financial assistance extended to a company 'as a whole' because it is not general assistance but, rather, is designated for a particular purpose.").  But that line of (non-binding) authority relies almost exclusively on legislative history.  *See* Reply at 3 (quoting S. Rep. 100-64 at *17–18 (1987)).  This interpretation of "federal financial assistance" does not obviously follow from the statutory text itself, and the Airline Defendants haven't demonstrated why it's the binding or best interpretation this Court should apply.

To the extent this textual gloss *does* limit the scope of the Rehabilitation Act, the Airline Defendants' position rests on a factual conclusion—that the funds in fact functioned as a subsidy—that isn't clear from the pleadings.  Faris alleges and argues that the Airline Defendants took money in accordance with the Rehabilitation Act and even acknowledged, as part of their contracts, that they would be subject to the Rehabilitation Act as a result.  *See* Plaintiff's Response ¶¶ 48–50 ("The Recipient shall comply with, and hereby assures that it will comply with, all applicable Federal statutes and regulations relating to nondiscrimination including … Section 504 of the Rehabilitation Act.").  Although the Airlines dispute this characterization, *see* Reply at 3, they haven't tried to convert this factual dispute to a summary-judgment motion or offered any proof that might support such a request.  The record and caselaw therefore don't clearly show the Airlines' funding falls outside the scope of the Rehabilitation Act sufficient to warrant dismissal.

Similar reasoning applies to the Airlines' second argument—that the CARES Act funding was directed towards "a designated purpose" (payroll) as opposed to the corporation "as a whole."  Reply at 3; *see also* Motion to Dismiss at 10.  This limit appears to originate in caselaw determining whether receipt of funds for one program or purpose subjects an entire organization to the Rehabilitation Act.  *See, e.g.*, *Collins v. Giving Back Fund*, No. 18-cv-8812, 2019 WL 3564578, at *11 (S.D.N.Y. Aug. 6, 2019) (citations omitted) ("[I]t has been repeatedly held that federal funding to a private entity not primarily engaged in education, health care, housing or parks and recreation, when that funding is earmarked for a particular project or site within the entity's operations, is not 'as a whole' federal funding for purposes of the Rehabilitation Act").  Again, Faris says that the Airlines receipt of funds "DID

PROVIDE an exception to the Supreme Court's general rule that the Rehabilitation Act does not apply to the airlines."  Plaintiff's Response ¶¶ 48–50.  And the notion that the funds apparently subsidized all employees doesn't readily support the Airlines' factual position that this (supposed, but disputed) limited purpose excuses it from Rehabilitation Act obligations.  To the extent the Airlines can show this limitation is properly traceable to the statute and supported by the record, that's an argument for summary judgment—not a motion to dismiss.

The Eleventh Circuit decision in *Shotz v. American Airlines, Inc.* is not to the contrary.  420 F.3d 1332, 1338 (11th Cir. 2005).  It held that funds Congress provided to the airline industry after September 11, 2001, under the Air Transportation Safety and System Stabilization Act were compensation rather than a subsidy.  *Id.* at 1336 ("Although the plaintiffs are correct in arguing that 'federal financial assistance' as used in the Rehabilitation Act should be interpreted broadly, the pertinent inquiry here is Congress's intent in passing the Stabilization Act. We must look to the Act itself to determine whether Congress intended to compensate or provide a subsidy."

The support this decision supplies (if any) for the distinct interpretive arguments the Airline Defendants offer here are not obvious—and the motion to dismiss doesn't demonstrate any such connection, either.  Nor have the Airlines adequately explained their theory (abbreviated at best) that the ACAA impliedly displaces the text of the Rehabilitation Act.  *See* Motion to Dismiss at 4; Reply at 11.  So at this stage the Airlines haven't shown that Faris's allegations that the Rehabilitation Act applies cannot succeed as a matter of law or are impossible to establish factually.

### 3.  Mootness of Equitable Claims

In addition to his damages claims, Faris also seeks nonmonetary relief declaring that the Airline Defendants committed the foregoing violations, as well as injunctive relief requiring the Airlines to transport him and precluding them from adopting similar mask policies in the future.  *See* Complaint at 174–80.  The Airline Defendants assert in a cursory and conclusory paragraph that these "equitable claims are moot in light of the Eleventh Circuit's recent decision in *Health Freedom Defense Fund v. President of the United States*, 71 F.4th 888 (11th Cir. 2023)."  Motion to Dismiss at 20.  In so doing, they simply reiterate their mootness arguments that this Court previously rejected.  *See id.*; First MTD Opinion.  Lacking any reasoned argument in support of this request for dismissal, the Court today rejects the Airline Defendants' mootness arguments for the same reasons that it did in August 2023.

The Airline Defendants still "don't identify which aspects of Faris's complaint are moot (or why)."  *See* First MTD Opinion at 4.  And "in the voluntary-cessation context, defendants rather than plaintiffs carry the heavy burden of making

absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur again." *Id.* (cleaned up) (citations omitted).[9]  Faris's complaint spans 833 paragraphs, 37 purported causes of action, and many more prayers for relief. *Id.*  Some of the equitable claims contained therein may well be moot.  But the Airline Defendants fail to meet their burden of showing why the allegedly wrongful behavior could not reasonably be expected to recur.  *See, e.g.*, *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 n.1 (2017) ("Voluntary cessation of a challenged practice does not moot a case unless 'subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'") (cleaned up) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).  Indeed, their filings "are devoid of any legal or factual citations demonstrating that Faris's claims are moot."  First MTD Opinion at 3.  Unaided by any legal or factual direction from the Airline Defendants, the Court declines to navigate on their behalf.

CONCLUSION

The Court grants in part and denies in part the Airline Defendants' motion to dismiss (DN 137).  The Court orders the parties to confer and file joint or separate status reports within 30 days.  Shortly thereafter the Court anticipates issuing an order for a meeting and report.

---

[9] "The Airline Defendants again contend that they didn't voluntarily stop enforcing the mask mandate—they just followed whatever regulation was in effect at the time.  But that factual contention doesn't address the legal question whether the plaintiff or defendant bears the burden of proof regarding voluntary cessation."  *See* DN 135 at 4 n.3.